<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

**No. 23-7124**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

CALVERT L. POTTER, ET AL.,
*Plaintiffs-Appellants*,

v.

DISTRICT OF COLUMBIA,
*Defendant-Appellee.*

---

On Appeal from the United States District Court for the District of Columbia
Honorable Richard J. Leon
(Nos. 1:01-cv-1189 and 1:05-cv-1792)

---

**OPENING BRIEF OF PLAINTIFFS-APPELLANTS**

---

Kelly J. Shackelford*
Jeffrey C. Mateer*
David J. Hacker (No. 61255)
FIRST LIBERTY INSTITUTE
2001 West Plano Pkwy., Ste. 1600
Plano, Texas 75075
(972) 941-4444
dhacker@firstliberty.org

Rebecca R. Dummermuth (No. 64835)
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave., NW
Ste. 1410
Washington, DC 20004
(202) 921-4105
bdummermuth@firstliberty.org

Robert K. Kelner (No. 47000)
Kevin B. Collins (No. 64870)
Lucas Moench (No. 64879)
Eli Nachmany*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rkelner@cov.com
kcollins@cov.com
lmoench@cov.com
enachmany@cov.com

* Application for admission
  forthcoming

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

The parties before the Court are Plaintiffs-Appellants Steven Chasin, Calvert Potter, Jasper Sterling, and Hassan Umrani, and Defendant-Appellee District of Columbia. There are no intervenors or amici at this time.

### B.    Rulings Under Review

Plaintiffs-Appellants seek review of the Memorandum Order of August 31, 2023 (JA267–270) denying Plaintiffs' Motion for Judgment of Civil Contempt—issued by Judge Richard J. Leon—in Civil Cases Nos. 01-1189 and 05-1792. *See Potter v. District of Columbia* (*Potter IV*), 2023 WL 6403852 (D.D.C. Aug. 31, 2023).

### C.    Related Cases

Counsel are aware of no related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C) currently pending in this Court or in any other court. The consolidated cases included within this appeal have previously been before this Court on several occasions. *See Potter, et al. v. District of Columbia*, Appeal Nos. 06-7043 and 07-7163; *Chasin, et al. v. District of Columbia*, Appeal Nos. 06-7044, 06-7050, and 07-7164.

Dated: January 22, 2024                    */s/ Lucas Moench*
                                          Lucas Moench

                                          *Counsel for Plaintiffs-Appellants*

i

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF AUTHORITIES ................................................. iv

GLOSSARY .............................................................. x

JURISDICTIONAL STATEMENT ........................................ 1

INTRODUCTION ....................................................... 1

STATEMENT OF ISSUES .............................................. 3

PERTINENT STATUTES AND REGULATIONS ............................. 3

STATEMENT OF THE CASE ............................................ 4

SUMMARY OF THE ARGUMENT ...................................... 12

STANDARD OF REVIEW ............................................. 13

ARGUMENT ......................................................... 14

I.    The District Court Erred by Assuming that "Reasonably Cautious"
      Behavior by the Department Could Excuse Non-Compliance with the
      Permanent Injunction. ...................................... 16

      A.    Once a Plaintiff Has Shown the Elements Necessary for a
            Finding of Civil Contempt, a Court's Discretion to Forbear
            from Finding Contempt is Circumscribed. ................. 18

      B.    The District Court's Novel "Reasonably Cautious" Standard Is
            Contrary to the "Exceptionally Demanding" Standard RFRA
            Imposes Upon Governmental Actions That Substantially
            Burden Religious Liberty. ............................... 23

      C.    The Rise of the COVID-19 Virus Provides No Justification for
            Ignoring the Plain Text of RFRA. ........................ 27

II.     The District Court Erred—Both Factually and Legally—by Holding
        That Contempt Was Inappropriate Because Plaintiffs' Damages Are
        Likely to be *De Minimis*. ................................................................ 31

        A.     The District Court's Conclusion that Plaintiffs' Damages Are
               Likely to be *De Minimis* Was Plainly Erroneous. ............................ 31

        B.     *De Minimis* Damages Are Enough to Support a RFRA Claim. .......... 36

CONCLUSION ........................................................................................... 38

CERTIFICATE OF COMPLIANCE ........................................................ 40

CERTIFICATE OF SERVICE ................................................................ 41

ADDENDUM

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Rivers v. U.S. Army Corps of Eng'rs,*
274 F. Supp. 2d 62 (D.D.C. 2003) ...................................................19

*Amador Cnty. v. U.S. Dep't of the Interior,*
772 F.3d 901 (D.C. Cir. 2014) .......................................................13

*Armstrong v. Exec. Off. of the President,*
1 F.3d 1274 (D.C. Cir. 1993) .............................................13, 16, 17

*Balla v. Idaho State Bd. of Corr.,*
869 F.2d 461 (9th Cir.1989) ..........................................................19

*Berks v. United States,*
825 F.2d 1262 (8th Cir. 1987) ........................................................35

*Boyd v. United States,*
116 U.S. 616 (1886)................................................................37, 38

*Broderick v. Donaldson,*
437 F.3d 1226 (D.C. Cir. 2006)........................................13, 15, 16, 17

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014).....................................................18, 24, 26, 37

*Cap. Hill Baptist Church v. Bowser,*
496 F. Supp. 3d 284 (D.D.C. 2020)..............................................27, 28

*City of Boerne v. Flores,*
521 U.S. 507 (1997)......................................................................24

*In re Dellinger,*
502 F.2d 813 (7th Cir. 1974) .........................................................23

*Eagle Comtronics, Inc. v. Arrow Commc'n Laby's, Inc.,*
305 F.3d 1303 (Fed. Cir. 2002) .......................................................22

*Elrod v. Burns,*
427 U.S. 347 (1976).......................................................................37

*Emp. Div. v. Smith*,
    494 U.S. 872 (1990)...................................................................36

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union*,
    103 F.3d 1007 (D.C. Cir. 1997)................................................20

*Gompers v. Buck's Stove & Range Co.*,
    221 U.S. 418 (1911)...................................................................29

*Gonzales v. O Centro Espirita Beneficente Uniao*
    *do Vegetal*, 546 U.S. 418 (2006) ...........................................28

*Harley-Davidson, Inc. v. Morris*,
    19 F.3d 142 (3d Cir. 1994) ........................................................22

*Hawkins v. Dep't. of Health & Hum. Servs. for N.H., Comm'r*,
    665 F.3d 25 (1st Cir. 2012).........................................................19

*Horne v. Flores*,
    557 U.S. 433 (2009)...................................................................30

*Howard Johnson Co. v. Khimani*,
    892 F.2d 1512 (11th Cir.1990) ..................................................19

*Johnson v. Koch Foods, Inc.*,
    670 F. Supp. 2d 657 (E.D. Tenn. 2009).....................................31

*Kaemmerling v. Lappin*,
    553 F.3d 669 (D.C. Cir. 2008)...................................................26

*Kennedy v. District of Columbia*,
    654 A.2d 847 (D.C. 1994) ...........................................................4

*Kennedy v. Dixon*,
    No. 2264-83, 1991 WL 489548 (D.C. Super. Ct. Oct. 24, 1991).........................4

*Lamont v. Postmaster Gen.*,
    381 U.S. 301 (1965)...................................................................37

*Mahoney v. U.S. Cap. Police Bd.*,
    566 F. Supp. 3d 1 (D.D.C. 2022)...............................................24

*Marshall v. Loc. Union No. 639, Int'l Bhd. of Teamsters*,
   593 F.2d 1297 (D.C. Cir. 1979) ........................................................22

*McAllen Grace Brethren Church v. Salazar*,
   764 F.3d 465 (5th Cir. 2014) ............................................................24

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949)..................................................17, 18, 20, 21, 37

*NLRB v. Blevins Popcorn Co.*,
   659 F.2d 1173 (D.C. Cir. 1981) .......................................................14

*Opulent Life Church v. City of Holly Springs, Miss*,
   697 F.3d 279 (5th Cir. 2012) ............................................................37

*Phillips v. Mabus*,
   894 F. Supp. 2d 71 (D.D.C. 2012) ...................................................15

*Potter v. District of Columbia* (*Potter I*),
   382 F. Supp. 2d 35 (D.D.C. 2005).......................................................4

*Potter v. District of Columbia* (*Potter II*),
   Nos. 01-1189 (JR), 05-1792 (JR), 2007 WL 2892685 (D.D.C. Sept.
   28, 2007) ......................................................................5, 6, 8, 19, 26

*Potter v. District of Columbia* (*Potter III*),
   558 F.3d 542 (D.C. Cir. 2009).....................................................6, 30

*Potter v. District of Columbia* (*Potter IV*),
   2023 WL 6403852 (D.D.C. Aug. 31, 2023) .....................................22

*Reliance Ins. Co. v. Mast Constr. Co.*,
   84 F.3d 372 (10th Cir. 1996) ......................................................13, 20

*Ex parte Robinson*,
   86 U.S. 505 (1873).............................................................................15

*Rodriguez v. IBP, Inc.*,
   243 F.3d 1221 (10th Cir. 2001) ........................................................13

*Roe v. Operation Rescue*,
   54 F.3d 133 (3d Cir. 1995) .........................................................21, 22

*Roman Cath. Archbishop v. Bowser*,
    531 F. Supp. 3d 22 (D.D.C. 2021)......................................................27

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020)............................................................................28

*Rudner v. Abbott Labs., Inc.*,
    664 F. Supp. 1100 (N.D. Ohio 1987) ...............................................31

*Rutan v. Republican Party of Ill.*,
    497 U.S. 62 (1990).............................................................................33

*Salazar ex rel. Salazar v. District of Columbia*,
    633 F.3d 1110 (D.C. Cir. 2011) ........................................................30

*SEC v. Bilzerian*,
    112 F. Supp. 2d 12 (D.D.C. 2000).............................................17, 19

*Sherbert v. Verner*,
    374 U.S. 398 (1963)...........................................................................26

*Singh v. Berger*,
    56 F.4th 88 (D.C. Cir. 2022).............................................................24

*Tandon v. Newsom*,
    593 U.S. 61 (2021).............................................................................28

*Tranzact Techs., Inc. v. 1Source Worldsite*,
    406 F.3d 851 (7th Cir. 2005) ......................................................33, 35

*Tyndale House Publishers, Inc. v. Sebelius*,
    904 F. Supp. 2d 106 (D.D.C. 2012)..................................................37

*U.S. Navy Seals 1-26 v. Biden*,
    142 S. Ct. 1301 (2022).......................................................................28

*U.S. Navy Seals 1-26 v. Biden*,
    27 F.4th 336 (5th Cir. 2022) .............................................................28

*United States v. City of Northlake*,
    942 F.2d 1164 (7th Cir. 1991) ..........................................................36

*United States v. IBM Corp.*,
   60 F.R.D. 650 (S.D.N.Y. 1973) .......................................................... 33

*United States v. Malenya*,
   736 F.3d 554 (D.C. Cir. 2013) ............................................................ 27

*United States v. Reide*,
   494 F.2d 644 (2d Cir. 1974) ............................................................... 23

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) ........................................................................ 38

*W.R. Grace & Co. v. Local Union 759*,
   461 U.S. 757 (1983) .......................................................................... 15

*Wash.-Balt. Newspaper Guild, Local 35 v. Wash. Post Co.*,
   626 F.2d 1029 (D.C. Cir. 1980) .......................................................... 13

*Wesley Jensen Corp. v. Bausch & Lomb, Inc.*,
   256 F. Supp. 2d 228 (D. Del. 2003) ................................................... 33

**Statutes and Rules**

28 U.S.C. § 1291 ......................................................................................... 1

28 U.S.C. § 1331 ......................................................................................... 1

42 U.S.C. § 2000bb-1(a) ........................................................................... 24

42 U.S.C. § 2000bb-1(b) ........................................................................... 24

42 U.S.C. § 2000bb-2(2) ........................................................................... 24

Fed. R. Civ. P. 60(b) ................................................................................. 30

**Other Authorities**

11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and
Procedure* § 2960 (Sept. 2023 update) ............................................... 15

Dan B. Dobbs, *Contempt of Court: A Survey*, 56 Cornell L. Rev. 183
(1971) ................................................................................................ 15

Douglas Laycock, *The Religious Freedom Restoration Act*, 1993 BYU
    L. Rev. 221........................................................................................................36

Nicholas R. Parrillo, *The Endgame of Administrative Law:*
    *Governmental Disobedience and the Judicial Contempt Power*,
    131 Harv. L. Rev. 685 (2018)............................................................................14

**GLOSSARY**

FEMS: District of Columbia Fire and Emergency Medical Services Department

PAPR: Powered Air-Purifying Respirator

RFRA: Religious Freedom Restoration Act

SCBA: Self-Contained Breathing Apparatus

## JURISDICTIONAL STATEMENT

On August 31, 2023, the district court entered an order denying Plaintiffs' Motion for Judgment of Civil Contempt. JA267–270. Plaintiffs filed a timely notice of appeal on September 27, 2023. JA271–272. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as this is an appeal from a final decision of the district court which terminated all further proceedings in the matter. The district court properly exercised jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## INTRODUCTION

Plaintiffs-Appellants Steven Chasin, Calvert Potter, Jasper Sterling, and Hassan Umrani are longtime firefighters and paramedics employed by the District of Columbia Fire and Emergency Medical Services Department (the "Department" or "FEMS") who collectively have provided more than 100 years of distinguished service to the Department and District residents. Messrs. Potter, Sterling, and Umrani are Muslim, and Mr. Chasin is Jewish. Each Plaintiff wears a beard in accordance with the tenets of his faith. But for an ever-shifting parade of purported reasons, the Department has for decades sought to require its firefighters and paramedics to be clean-shaven while on duty.

In 2007, after years of litigation, Plaintiffs obtained a permanent injunction—affirmed by this Court—that prohibits the Department from enforcing against them

1

a requirement that they remain clean shaven while on duty. JA88–89.[1] In early 2020, the Department issued a new policy prohibiting firefighters and paramedics from maintaining most types of facial hair, ostensibly due to the need to wear facial coverings to combat the spread of the COVID-19 virus. Notwithstanding the Permanent Injunction—which Plaintiffs promptly brought to the Department's attention—the Department enforced this policy against Plaintiffs beginning in March 2020. When Plaintiffs stood on their rights and refused to shave their beards, they were removed from active field duty and reassigned to less desirable and less well-compensated administrative and logistical roles for more than a year and a half before they were allowed to return to field duty. Even then, the Department only restored Plaintiffs to their positions after receiving a demand letter from the undersigned counsel. The Department never petitioned the district court to modify or set aside the Permanent Injunction. It simply acted as though the Permanent Injunction did not exist.

In light of the Department's decision to ignore a binding court order, Plaintiffs asked the district court to hold the Department in civil contempt and award them

---

[1] Messrs. Potter and Chasin were the named plaintiffs in the two original consolidated proceedings. Messrs. Sterling and Umrani were co-plaintiffs. The other original plaintiffs have all since left or retired from the Department, were not parties to Plaintiffs-Appellants' contempt motion, and therefore are not parties to this appeal.

damages incurred as a result of their reassignments. Despite finding that Plaintiffs "may well have proven that the Department violated a clear and [un]ambiguous order," district court Judge Richard Leon declined to hold the Department in contempt because: (1) in his view, the Department had "acted in a reasonably cautious way" in light of COVID-19; and (2) he speculated that Plaintiffs' "damages are likely to be de minimis." This reasoning is based on both clear legal errors and erroneous findings of fact. Accordingly, the district court's ruling should be reversed and the case should be remanded for calculation of damages.

## STATEMENT OF ISSUES

1.      Whether the district court abused its discretion in determining that the Government may violate the Religious Freedom Restoration Act ("RFRA") if it acts merely in a "reasonably cautious" manner.

2.      Whether the district court abused its discretion in determining that Plaintiffs' damages were *de minimis* and that *de minimis* damages are not enough to warrant enforcement of an injunction issued pursuant to RFRA.

## PERTINENT STATUTES AND REGULATIONS

FEMS Special Order No. 20 is reproduced at JA28–30. FEMS Bulletin No. 10 is reproduced at JA106–110. Except for those reproduced in the Joint Appendix and listed here, all pertinent statutes and regulations are reproduced in the attached Addendum.

3

## STATEMENT OF THE CASE

This appeal represents the latest stage in a multi-decade effort by the Department to require its firefighters and paramedics to be clean-shaven while on duty, even when they maintain beards for religious reasons. During this time, the Department has offered an ever-shifting series of justifications for this requirement. Beginning around 1980, the Department enacted a clean-shaven policy that it alleged promoted safety, "fostered a sense of esprit de corps and aided public recognition of firefighters." *Kennedy v. Dixon*, No. 2264-83, 1991 WL 489548, at *1 (D.C. Super. Ct. Oct. 24, 1991), *aff'd in part, rev'd in part sub nom. Kennedy v. District of Columbia*, 654 A.2d 847 (D.C. 1994). As applied, that policy violated the District of Columbia Human Rights Act. *See Kennedy*, 654 A.2d at 856–57.

But the Department refused to give up, and put forward similar policies in 1997 and 2001, ostensibly "to increase discipline, uniformity, safety and <u>esprit de corp</u> [sic] throughout th[e] Department." JA23. Messrs. Potter and Umrani (among others) challenged that policy in May 2001 and obtained a preliminary injunction the following month. JA24–26. Following the terrorist attacks of September 11, 2001, the Department announced that it was drafting yet another new grooming policy, which it did not release until February 2005. *See* JA3 (Joint Status Report, Dkt. 39); *see also Potter v. District of Columbia* (*Potter I*), 382 F. Supp. 2d 35, 37 (D.D.C. 2005). Notwithstanding the fact that more than three years had passed since

the September 11th terrorist attacks by that point, the Department claimed that the new policy was "necessitated by the new and unique terrorism threat to this city." *Potter* Dkt. 66 (Def.'s Opp'n to Pls.' Mot. for Clarification of Prelim. Inj.) at 3.

> That policy—formally known as "Special Order 20"—provided that:
>
> members [such as Plaintiffs] who are required to wear tight fitting facepieces are not permitted to have: [A] Facial hair that comes between the sealing surface of the facepiece and the face or that interferes with the valve function; or [B] Any condition that interferes with the face to face piece seal or valve function.

JA30. Plaintiffs challenged that policy, arguing that it violated their rights under, *inter alia*, RFRA. The Department contended that during a hypothetical "mass casualty or terrorist event" in the District, bearded firefighters and paramedics would be unable safely to wear a special type of mask (called an "Air-Purifying Respirator") intended to be worn only on those rare and unique occasions. *Potter v. District of Columbia* (*Potter II*), Nos. 01-1189 (JR), 05-1792 (JR), 2007 WL 2892685, at *4, *7–8 (D.D.C. Sept. 28, 2007). Plaintiffs pointed out that the Department's speculative justification did not represent the least restrictive means to achieve a compelling government interest, the standard that RFRA required the Department to meet before substantially infringing Plaintiffs' religious liberties. *Id.* at *6. District Judge James Robertson agreed, and he permanently enjoined the Department from enforcing the facial hair provisions of Special Order 20 against Plaintiffs. JA88–89.

Specifically, Judge Robertson concluded that "[e]ven in the catastrophic scenario the Department imagines, there will be time to assign the tiny minority of firefighters whose religions require them to wear beards" to duties that do not implicate safety concerns, and the record evidence showed that "a beard has never interfered with the ability of a FEMS worker to do his duty, and is unlikely to do so." *Potter II*, 2007 WL 2892685 at *9. In the event of a catastrophic mass casualty event, Judge Robertson determined, the Department could redeploy bearded firefighters "either 'up' to areas of duty where [self-contained breathing apparatus (SCBA)] use is required, or 'down' to . . . areas where no respiratory protection is needed."[2] *Id.* at *8. In other words, the Department had not carried its burden under RFRA to adopt the least restrictive means of furthering its stated safety interest. This Court affirmed the Permanent Injunction on appeal. *See Potter v. District of Columbia* (*Potter III*), 558 F.3d 542 (D.C. Cir. 2009).

Between late 2019 and early 2020, Plaintiffs became aware that the Department was developing a new facial hair policy that was materially identical to

---

[2] A SCBA is the typical breathing apparatus that firefighters often wear and is different from an Air-Purifying Respirator. Unlike the Air-Purifying Respirator, a SCBA is "'positive pressure,' meaning that the air pressure is higher within the firefighter's [mask] than in the outside atmosphere. Any leak in the seal of the mask will cause air to flow out of the mask, not in, so that the firefighter is protected from any dangers in the air." *Potter II*, 2007 WL 2892685, at *4. Accordingly, as Judge Robertson observed, "[b]earded firefighters have long worn tight-fitting masks on their SCBA units without incident." *Id.* at *5.

the one that Judge Robertson enjoined in 2007. JA91 ¶ 8; JA129 ¶ 8; JA145 ¶ 8; JA149 ¶ 7. On February 12, 2020, the Department formally issued this new policy, which was called "Safety Operations Bulletin No. 10." JA92 ¶ 11; JA96–102. Bulletin No. 10—which contained facial hair regulations that were materially identical to those included in the enjoined Special Order 20—provided that:

> Employees are not permitted to have: [1] Facial hair that comes between the sealing surface of the face piece and the face; [2] Facial hair that interferes with the valve function; or [3] Any condition that interferes with the face-to-face piece seal or valve function.

JA100 § 2.13. Enforcement of Bulletin No. 10 was originally scheduled to begin on April 5, 2020. JA97. Then, on March 12, 2020, the Department announced that enforcement would instead begin on March 15, 2020, claiming for the first time that the new facial hair policy was allegedly necessary to combat the spread of COVID-19. JA104.

Notwithstanding the Permanent Injunction, the Department refused to exempt Plaintiffs from this new policy. Between March 15 and March 17, 2020, each Plaintiff came to work prepared to begin his duly assigned duties as a firefighter or paramedic.[3] JA92 ¶ 13; JA130 ¶ 14; JA145 ¶ 10; JA149 ¶ 9. But because all four Plaintiffs came to work with facial hair that they wore for religious reasons, the

---

[3] Mr. Potter worked in the Department's Special Operations Division, Mr. Umrani worked as a firefighter/EMT, and Messrs. Sterling and Chasin were paramedics. JA90 ¶ 3; JA128 ¶ 3; JA144 ¶ 3; JA148 ¶ 3.

7

Department prohibited them from assuming their regular duties and instead reassigned them to logistical positions within the Department. JA92–93 ¶¶ 13–16; JA130–131 ¶¶ 14–17; JA145–146 ¶¶ 10–13; JA149–150 ¶¶ 9–12. Each Plaintiff immediately made clear to his supervising officer that he did not consent to the reassignment, which he believed was in direct violation of the Permanent Injunction that the district court issued. JA92 ¶ 14; JA131 ¶ 16; JA146 ¶ 11; JA150 ¶ 11.

In a *post-hoc* declaration submitted for the purpose of this litigation, the Department claims that the COVID-19 pandemic required enforcement of Bulletin No. 10 against Plaintiffs. JA204–205. Whether or not this purported justification is merely pretextual, the Department did not petition the district court to modify or set aside the Permanent Injunction before enforcing Bulletin No. 10 against Plaintiffs, even though the new ban on facial hair clearly violated the Injunction. The Department simply chose to ignore it. As a result, Plaintiffs were not allowed to return to active field duty for a year and a half, finally receiving permission to do so shortly after the Department received a demand letter from undersigned counsel.[4] JA120–121 ¶ 3; JA131 ¶ 20; JA146 ¶ 14; JA150 ¶ 13.

As a result of their forced reassignments, Plaintiffs suffered quantifiable financial harm and disruptions to their lifestyle. Specifically, Plaintiffs received less

---

[4] Mr. Chasin remained in his logistical position until March 2021, when he was able to transfer to the position of FEMS Salesforce Administrator. JA93 ¶ 17. He chose to remain in that position after being permitted to return to field duty. *Id.*

total compensation during the period of their reassignments than they would have received if they had been allowed to remain on field duty. For example, each Plaintiff had fewer opportunities to earn overtime, holiday, weekend, and night-differential pay throughout this period. JA94 ¶ 21; JA131–132 ¶ 21; JA146 ¶ 15; JA150 ¶ 14. The reassignments also upended Plaintiffs' work schedules. While in the field, Plaintiffs are typically required to be on-duty for 24 hours, followed by 72 hours off-duty. JA94 ¶ 22; JA132 ¶ 22; JA146–147 ¶ 16; JA150 ¶ 15. During the time they were reassigned, however, Plaintiffs were required to work during normal business hours, five days per week. JA94 ¶ 22; JA132 ¶ 22; JA146–147 ¶ 16; JA150 ¶ 15. This caused Plaintiffs significant scheduling disruptions, and it required them to use annual leave time to attend to personal commitments (such as family and medical appointments) that they had previously scheduled for their days off. JA94 ¶¶ 22; JA132 ¶¶ 22–23; JA146–147 ¶¶ 16–18; JA150–151 ¶¶ 14–16.

After Plaintiffs eventually were permitted to return to field duty in late 2021, they engaged in settlement discussions with the Department regarding their outstanding claims for damages that had accrued during the time they were removed from field duty in violation of the Permanent Injunction. JA121–123 ¶¶ 6–12. These discussions were ultimately unsuccessful. JA123 ¶¶ 12–13. Accordingly, on November 7, 2022, Plaintiffs moved the district court to hold the Department in civil contempt and to award Plaintiffs compensation for the damages they had incurred

as a result of the Department's conscious decision to violate the Permanent Injunction. *See Potter* Dkt. 224 (Pls.' Mot. for Contempt).

On August 31, 2023, without oral argument, the district court denied Plaintiffs' motion. JA267–270. In his brief Memorandum Order, Judge Leon agreed that Plaintiffs "may well have proven that the Department violated" the Permanent Injunction "by issuing and enforcing a policy nearly identical to the enjoined Special Order 20 and by returning plaintiffs to administrative duty." JA270. He nonetheless declined to hold the Department in contempt for its unlawful actions, for two reasons. <u>First</u>, Judge Leon surmised that the Department had "acted in a reasonably cautious way, under unprecedented and extraordinary circumstances," to respond to challenges posed by the rise of COIVD-19.[5] *Id.* <u>Second</u>, Judge Leon indicated that he believed the "Department should not be branded as a contemnor . . . especially when [Plaintiffs'] damages are likely to be de minimis." *Id.*

In so ruling, Judge Leon abused the discretion afforded to district court judges charged with enforcing permanent injunctive orders in two ways. <u>First</u>, by excusing the Department's flouting of the Permanent Injunction on the ground that it "acted

---

[5] In Plaintiffs' briefing to the district court, they provided evidence that the Department's assertion that the rise of COVID-19 was the only reason it applied its new facial hair rules to Plaintiffs was incorrect. *See Potter* Dkt. 224-1 (Pls.' Mem. in Support of Mot. for Contempt) at 19. Judge Leon's Memorandum Order does not include an explicit factual finding on this question, although he appears implicitly to have credited the Department's position.

in a reasonably cautious way," Judge Leon disregarded the stringent showing RFRA requires government agencies to make before they may impose substantial burdens on individuals' religious liberty. <u>Second</u>, Judge Leon made the clearly erroneous factual finding that Plaintiffs' damages were "likely to be de minimis"—a conclusion that is wholly unsupported by the factual record—while also committing legal error because the loss of religious freedom, even for minimal periods of time, constitutes irreparable injury. As a result, the district court did not enforce Plaintiffs' RFRA rights and failed to remedy the harms that Plaintiffs suffered as a result of the Department's clear violation of the district court's permanent injunction.

Accordingly, this Court should reverse the district court's denial of Plaintiffs' contempt motion and remand this action for the purpose of discovery on the issue of damages.

## SUMMARY OF THE ARGUMENT

1.  In 2007, Plaintiffs obtained a Permanent Injunction against the District of Columbia Fire and Emergency Medical Services Department. That injunction protects Plaintiffs' rights under the Religious Freedom Restoration Act. After the Department violated that injunction, Plaintiffs moved the district court to hold the Department in contempt. Plaintiffs made the showing required for obtaining contempt sanctions. Nevertheless, the district court declined to hold the government in contempt.

2.  This Court reviews the refusal to order civil contempt for abuse of discretion. Here, the district court abused its discretion by making multiple legal errors. First, the district court stated the wrong standard for RFRA, allowing the government to violate the RFRA-protective injunction because the government "acted in a reasonably cautious way." Second, the district court declined to hold the Department in contempt because it judged that Plaintiffs' damages would be *de minimis*. Both of these holdings, each of which were necessary to the judgment below, constitute legal errors. The latter holding—regarding the measure of damages—also constitutes an erroneous finding of fact. These errors each establish independent abuses of discretion that warrant reversal.

## STANDARD OF REVIEW

"[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence." *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (quoting *Armstrong v. Exec. Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993)). "On appeal, the petitioner must prove that the trial judge abused his discretion in refusing to order civil contempt." *Wash.-Balt. Newspaper Guild, Local 35 v. Wash. Post Co.*, 626 F.2d 1029, 1031 (D.C. Cir. 1980). "A district court abuses its discretion when it applies the wrong legal standard or relies on clearly erroneous findings of fact." *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014); *see also Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001) ("Abuse of discretion is established if the district court's adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact." (quoting *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 375–76 (10th Cir. 1996))).

# ARGUMENT

In 2007, after years of litigation, Judge Robertson issued an injunction to protect Plaintiffs' rights under RFRA. Plaintiffs relied on that injunction to exercise their religious beliefs while serving their community. Yet despite clear and convincing evidence that the Department later violated that injunction, Judge Leon declined to enforce the injunction that his predecessor issued. That error undermined Plaintiffs' civil rights.

From voting rights litigation to lawsuits against prisons, courts are commonly called to redress civil rights violations by government entities. Sometimes this requires prohibiting enforcement of an unconstitutional or unlawful policy, even if such a directive would have institutional consequences for the entity in question. But if the government does not obey the injunction, what then? "The true endgame is contempt. If a party fails to comply with a court order, the court can find that party, even if it is a federal agency, in contempt." Nicholas R. Parrillo, *The Endgame of Administrative Law: Governmental Disobedience and the Judicial Contempt Power*, 131 Harv. L. Rev. 685, 691 (2018).

Contempt thus functions as an important mechanism to ensure that the injunction is a meaningful remedy to unlawful state action. "Civil contempt . . . is a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." *NLRB v. Blevins Popcorn Co.*, 659

F.2d 1173, 1184 (D.C. Cir. 1981). The contempt power is "essential to . . . the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Broderick*, 437 F.3d at 1234 (quoting *Ex parte Robinson*, 86 U.S. 505, 510 (1873)). For that reason, "[a]n order granting injunctive relief is enforceable by the district court's power of contempt." *Phillips v. Mabus*, 894 F. Supp. 2d 71, 91 (D.D.C. 2012). But the flipside is also true—without contempt, a victory in court is not meaningful in the real world.

When a court issues an injunction, the integrity of the judicial system depends on litigants obeying that injunction. "An injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). That is because the injunction represents the practical effectuation of another litigant's rights. So "[t]he kind of contempt proceeding used when a court order is disobeyed . . . is merely a way of compelling compliance or getting the opposing party what he is entitled to by way of relief." Dan B. Dobbs, *Contempt of Court: A Survey*, 56 Cornell L. Rev. 183, 220 (1971). When a court issues a civil contempt order, "the ultimate object of the punishment is the enforcement of the rights and remedies of a litigant." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2960 (Sept. 2023 update).

A party seeking the remedial sanction of civil contempt must demonstrate that "the putative contemnor has violated an order that is clear and unambiguous." *Broderick*, 437 F.3d at 1234 (quoting *Armstrong*, 1 F.3d at 128). Here the district court concluded that Plaintiffs had made this required demonstration, JA270, yet it nevertheless chose not to hold the government in contempt. In arriving at that conclusion, the district court made multiple errors with respect to the underlying statute that the injunction was enforcing: RFRA.

Each of those errors constitutes an abuse of discretion. First, the district court was wrong to articulate the standard for governmental compliance with RFRA as merely requiring that the government act in a "reasonably cautious" manner. *Id.* Second, the district court erred when it disregarded Plaintiffs' request for contempt because their "damages are likely to be de minimis." *Id.* For these reasons, this Court should reverse the district court's denial of Plaintiffs' contempt motion.

## I.    The District Court Erred by Assuming that "Reasonably Cautious" Behavior by the Department Could Excuse Non-Compliance with the Permanent Injunction.

The district court erred as a matter of law by concluding that the Department's otherwise contemptuous conduct could nevertheless be excused based upon a finding that the Department acted in what the court deemed a "reasonably cautious" manner. Specifically, after finding that Plaintiffs "may well have proven that the Department violated a clear and [un]ambiguous order," *id.*, the district court

16

nevertheless concluded that contempt was inappropriate because "the Department acted in a reasonably cautious way" in light of the rise of the COVID-19 virus. *Id.*

So far as Plaintiffs are aware, there is no precedent for this "reasonably cautious" exception that the district court employed with little explanation. Indeed, once a plaintiff has made a showing by clear and convincing evidence that a "putative contemnor has violated an order that is clear and unambiguous," *Broderick*, 437 F.3d at 1234 (quoting *Armstrong*, 1 F.3d at 128), a district court's discretion to refrain from holding the defendant in civil contempt is limited. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (in civil contempt action, "the grant or withholding of remedial relief is not wholly discretionary with the judge"). To date, federal courts have recognized only certain narrow, well-established circumstances in which a plaintiff who has otherwise satisfied the requirements for civil contempt may nevertheless be denied that remedy—namely, instances in which the defendant has shown good faith "substantial[] compliance" with the court order at issue, or where compliance is impossible. *See, e.g., SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16–17 (D.D.C. 2000) (recognizing impossibility defense); *id.* at 16 n.5 (recognizing "good faith substantial compliance" defense). Needless to say, the district court did not find either of those circumstances to be applicable here. Instead, the district court created its own "reasonably cautious" exception, which is unprecedented and flies in the face of the "exceptionally

17

demanding" standard RFRA requires the government to meet before it may substantially burden religious liberties. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014). Accordingly, the district court's invocation of and reliance upon this new "reasonably cautious" standard constitutes reversible legal error.

### A. Once a Plaintiff Has Shown the Elements Necessary for a Finding of Civil Contempt, a Court's Discretion to Forbear from Finding Contempt is Circumscribed.

Having concluded that Plaintiffs "may well have proven that the Department violated a clear and [un]ambiguous order," JA270, the district court's decision to graft a new doctrine onto the law of civil contempt—that a defendant need not be held in contempt for violating a court order when it acted in a "reasonably cautious" manner—constitutes reversible error. While district courts do have *some* discretion in imposing the contempt sanction, that discretion is not unbounded. *See McComb*, 336 U.S. at 191 (in civil contempt action, "the grant or withholding of remedial relief is not wholly discretionary with the judge"). Contrary to the district court's apparent assumption, courts do not have a freestanding, standardless license to forego the contempt sanction whenever they see fit. Rather, where a plaintiff has proven a violation of a court order, the circumstances in which a court may nonetheless refuse to find contempt are narrowly limited to only a few well-established exceptions.

First, where a plaintiff has otherwise proven its case for contempt, several circuits have recognized that "a court may exercise its discretion and decline to make

a finding of contempt where the defendant has been *substantially compliant with the terms of the underlying order*." *Hawkins v. Dep't. of Health & Hum. Servs. for N.H., Comm'r*, 665 F.3d 25, 31 n.7 (1st Cir. 2012) (emphasis added); *see also Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir.1990) ("Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance."); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466 (9th Cir.1989) ("Substantial compliance with a court order is a defense to an action for civil contempt."). The Department's brief to the district court argued that it had substantially complied with the Permanent Injunction, *see Potter* Dkt. 232 (Def.'s Opp'n to Pls.' Mot. for Contempt) at 20, yet the district court did not find any such substantial compliance or rest its decision on the ground that there was any degree of compliance with the injunction. And for good reason. The Department's decision to remove Plaintiffs from field duty for standing on their rights and refusing to shave their beards violated the very core of the Permanent Injunction. *See Potter II*, 2007 WL 2892685, at *1 ("I have concluded that in the District of Columbia . . . the fire department may not impose a shaving requirement on men who wear their beards for religious reasons.").

Second, a defendant may justify noncompliance through a showing—"categorically and in detail"—that it "is unable to comply with the orders." *See Bilzerian*, 112 F. Supp. 2d at 16 (citation omitted); *Am. Rivers v. U.S. Army Corps*

19

*of Eng'rs*, 274 F. Supp. 2d 62, 66 (D.D.C. 2003) ("[I]mpossibility exists only when a party demonstrates that it is 'powerless to comply' with a court's order." (citation omitted)); *see also Reliance Ins.*, 159 F.3d at 1317 ("Whether First Security was capable of complying with the order is a defense to contempt."). The Department did not even try to argue that this exception applies here, as there is no plausible argument that the Department was unable to comply with the Permanent Injunction. The Permanent Injunction prohibits the Department from enforcing specific facial hair rules against a specific subset of firefighters and paramedics (*i.e.*, the Plaintiffs). Since the Permanent Injunction is a *prohibitory* injunction that merely directs the Department to forbear from taking specific actions rather than a *mandatory* injunction requiring the Department to take a specific affirmative act, it defies credulity to suggest that the Department was unable to comply, particularly when the Department has now come back into compliance by restoring Plaintiffs to field duty.

Having determined that Plaintiffs made out a *prima facie* case of civil contempt and having declined to hold that either of the above doctrines applied, the district court did not have freestanding discretion to create other *ad hoc* reasons to forgo the contempt sanction. *See McComb*, 336 U.S. at 191. For example, this Court has held that another potential justification for violating a court order—"good faith" in and of itself—does not shield a defendant from contempt. *See Food Lion, Inc. v.*

*United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1017–18 (D.C. Cir. 1997) ("Although a party's good faith may be a factor in determining whether substantial compliance occurred, and may be considered in mitigation of damages, good faith alone is not sufficient to excuse contempt."); *see also McComb*, 336 U.S. at 191 ("An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.").[6]

Moreover, multiple federal appellate courts have concluded that, once a party meets the standard for proving a violation of a clear and unambiguous order, a failure to hold a non-compliant party in contempt constitutes an abuse of discretion (although, to be sure, once the threshold issue of *whether* a party should be held in contempt is resolved, the *nature* of the appropriate contempt sanction is a separate question for which further judicial discretion is appropriate). In *Roe v. Operation Rescue*, the Third Circuit determined that "[t]he district court erred as a matter of law by ignoring the vast documentary evidence and undisputed testimony demonstrating that" members of a "campaign to protest abortion rights" had "acted

---

[6] Plaintiffs maintain that the Department's noncompliance with the Permanent Injunction was not in good faith, given that the entire purpose of the Permanent Injunction was to prohibit the Department from enforcing a facial hair policy against Plaintiffs that was materially identical to the Department's current facial hair policy. But even crediting the district court's conclusion that the Department acted in good faith "under unprecedented and extraordinary circumstances," JA270, this determination would only impact the proper measure of compensation for Plaintiffs *after* the imposition of contempt sanctions.

in concert to violate" a permanent injunction prohibiting the blockade of a Philadelphia-area abortion clinic. 54 F.3d 133, 136–37 (3d Cir. 1995); *see also Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 147, 149 (3d Cir. 1994) (reversing a "district court's denial of [a] contempt motion . . . and . . . remand[ing] to the district court for determination of an appropriate sanction" when a party had violated an "unambiguous consent judgment"). That comports with the Federal Circuit's decision in *Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc.*, in which the court concluded that the defendant's "undisputed conduct, plus the language of the unambiguous protective order, amount[ed] to the clear and convincing evidence needed to demonstrate that [the defendant] was in civil contempt of court." 305 F.3d 1303, 1314 (Fed. Cir. 2002).

Judge Leon claimed that "courts need not impose the contempt sanction for every violation." *Potter v. District of Columbia* (*Potter IV*), 2023 WL 6403852, at *2 (D.D.C. Aug. 31, 2023) (quoting *Marshall v. Loc. Union No. 639, Int'l Bhd. of Teamsters*, 593 F.2d 1297, 1303 (D.C. Cir. 1979)). But the case that Judge Leon quotes for this proposition makes that statement in the context of explaining that "courts should be particularly wary of imposing contempt sanctions for violations of an order that is *ambiguous*." *Marshall*, 593 F.2d at 1303 (emphasis added). In *Marshall*, this Court agreed that a "1974 order was not specific enough to warrant imposition of contempt sanctions." *Id.* In this case, by contrast, Judge Leon

22

acknowledged that the injunction was clear, yet he nevertheless declined to hold the Department in contempt for violating it.[7] While Judge Leon may have had discretion to do so if the order were ambiguous or Plaintiffs had not proven their case with "clear and convincing" evidence, district courts are not invested with discretion to deny contempt motions when the moving party carries its burden.

As the district court's invocation of its new "reasonably cautious" standard finds no basis in the law, the district court's use of that standard to justify a finding of non-contempt constitutes an abuse of discretion. Accordingly, reversal is appropriate.

**B.    The District Court's Novel "Reasonably Cautious" Standard Is Contrary to the "Exceptionally Demanding" Standard RFRA Imposes Upon Governmental Actions That Substantially Burden Religious Liberty.**

Besides having no basis in existing law, the novel "reasonably cautious" standard the district court created in order to excuse the Department's contemptuous conduct is also contrary to the plain text of RFRA. RFRA is a federal civil rights

---

[7] The cases *Marshall* itself relies upon are similarly inapposite. *United States v. Reide*, 494 F.2d 644 (2d Cir. 1974), cited in *Marshall*, was a criminal case in which the appellant appealed a contempt order arising from "his refusal to answer questions put to him during a Grand Jury investigation." 494 F.2d at 646. It involved complex constitutional considerations not present here, including the intersection of the law of contempt and an individual's Fifth Amendment right against self-incrimination. *Id. In re Dellinger*, 502 F.2d 813 (7th Cir. 1974), also cited in *Marshall*, involved criminal rather than civil contempt, *id.* at 814–15, and is thus equally inapposite to this civil contempt action.

statute which mandates that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).[8] The only exception to this requirement occurs if the government "demonstrates that application of the burden to the person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(b). The district court's refusal to hold the Department in contempt disregards this exacting standard and thus does not comport with RFRA.

As the United States Supreme Court has made clear, "[t]he least-restrictive-means standard is exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728. It requires that before the government seeks to override religious freedom to advance a particular interest, it must show "that its approach is 'narrowly tailored' in pursuit of those interests." *Singh v. Berger*, 56 F.4th 88, 103 (D.C. Cir. 2022) (quoting *Hobby Lobby*, 573 U.S. at 719 n.30.[9] "A statute or regulation is the least restrictive

---

[8] Although RFRA does not apply to state governments, *see City of Boerne v. Flores*, 521 U.S. 507 (1997), it does apply to the D.C. government, *see* 42 U.S.C. § 2000bb-2(2); *accord Mahoney v. U.S. Cap. Police Bd.*, 566 F. Supp. 3d 1, 16–17 (D.D.C. 2022).

[9] *Cf. McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 475–76 (5th Cir. 2014) ("In the context of these cases, 'least restrictive means' is a severe form of the 'narrowly tailored' test. . . . Furthermore, the Department must provide *actual evidence*, not just conjecture, demonstrating that the regulatory framework in question is, in fact, the least restrictive means.").

means if 'no alternative forms of regulation would [accomplish the compelling interest] without infringing [religious exercise] rights.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 684 (D.C. Cir. 2008) (alterations in original) (quoting *Sherbert v. Verner*, 374 U.S. 398, 407 (1963)).

The district court's opinion eviscerates RFRA—the very law the Permanent Injunction was intended to effectuate. Had the Department petitioned the district court for prospective relief from the Permanent Injunction initially (as Federal Rule of Civil Procedure 60(b) requires), the Department would have had to affirmatively show that the application of Bulletin No. 10 to Plaintiffs satisfies RFRA's "exceptionally demanding" least-restrictive means test. *Hobby Lobby*, 573 U.S. at 728. Instead, the district court dodged this exacting requirement by deeming itself satisfied that the government had acted merely "in a reasonably cautious way, under unprecedented and extraordinary circumstances, to keep plaintiffs and the public it served as safe as it could." JA270. This misstatement of the RFRA standard was error. The fact that this case occurred during the COVID-19 pandemic does not alter this conclusion. Reasonable caution differs from the required least-restrictive-means here. Indeed, assuming the public health precautions necessitated by COVID-19 constituted a compelling interest of the Department, the Department still would have had to demonstrate that reassigning Plaintiffs to administrative duties was the "least restrictive means" of furthering that interest. Specifically, the Department would

have had to show that less restrictive alternatives, such as requiring Plaintiffs to wear face masks that do not need a tight seal against the face to provide the necessary protection—including Powered Air-Purifying Respirators ("PAPRs")—were not viable COVID-19 precautions.[10]

The record in this case demonstrates the slippery slope the district court's weak application of the Permanent Injunction creates. For decades, the Department has repeatedly and unsuccessfully sought to require Plaintiffs to be clean shaven, based on an ever-evolving series of justifications. At various times, it has appealed to *esprit de corps*, discipline, uniformity, "safety," and the "new and unique terrorism threat" the District faced after the September 11th attacks. *See supra* pp. 3–4. Judge Robertson previously found that the Department's then-proffered justification for violating RFRA "lacks credibility." *Potter II*, 2007 WL 2892685, at *8–9. Now, the Department dubiously hangs its hat on COVID-19 and other "updated guidance" as its reasons for its clean-shaven preference. *See Potter* Dkt. 232 at 15. If the Department could avoid the Permanent Injunction merely by proffering a new justification for its facial hair policy without needing to

---

[10] Notably, Judge Robertson's opinion awarding Plaintiffs the Permanent Injunction rested, in part, on the Department's failure to consider various alternatives that could accommodate them—including PAPRs. *Potter II*, 2007 WL 2892685, at *10. In light of Judge Robertson's opinion in this very matter, the Department's apparent failure to consider permitting Plaintiffs to wear personal protective equipment that would be compatible with beards, including, for example, PAPRs, as alternatives to N95 masks with shaving, is especially suspect.

26

demonstrate that the policy is now the least restrictive means of achieving a wholly new objective, the religious liberty guarantee that RFRA affords Plaintiffs would be rendered a dead letter. The Department never attempted to make such a showing, and Judge Leon did not consider whether it would be an acceptable alternative in his summary disposition of this case.

The misapplication of RFRA's legal standard by the district court is the end of the appellate court's inquiry. As this Court has explained: "Failure to apply the correct legal standard itself constitutes an abuse of discretion." *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013). RFRA prescribes an exacting test, requiring the government to achieve its ends by way of the least restrictive means possible. RFRA's version of that test is a strong form of the "narrowly tailored" inquiry. But instead of applying this standard, the district court fashioned an alternative, undefined "reasonably cautious" framework that is untethered to the statute's mandate. That was legal error and therefore an abuse of discretion.

### C. The Rise of the COVID-19 Virus Provides No Justification for Ignoring the Plain Text of RFRA.

In excusing the Department's violation of the Permanent Injunction, the district court cited the COVID-19 pandemic as the reason why the Department "should not be branded as a contemnor." JA270. However, even amid the pandemic, the government needed to satisfy the least-restrictive-means test. *See Roman Cath. Archbishop v. Bowser*, 531 F. Supp. 3d 22, 38 (D.D.C. 2021); *Cap. Hill Baptist*

27

*Church v. Bowser*, 496 F. Supp. 3d 284, 297–98 (D.D.C. 2020) ("Under RFRA, the District must prove a compelling interest in banning the specific religious practice at issue" due to the COVID-19 pandemic); *cf. Tandon v. Newsom*, 593 U.S. 61, 64, 1297–98 (2021) (applying strict scrutiny to "California's COVID restrictions on religious exercise"); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (applying strict scrutiny to New York's COVID restrictions on religious exercise); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 352 (5th Cir. 2022) (finding Navy violated RFRA in mandating COVID vaccination for sailors without providing religious accommodations), *granting partial stay*, 142 S. Ct. 1301 (2022).

Here, the Department is unable to "rely on its generalized interests in protecting public health or combating the COVID-19 pandemic, critical though they may be." *Capitol Hill Baptist Church*, 496 F. Supp. 3d at 298; *see Tandon*, 593 U.S. at 64 (concluding California had "not shown that public health would be imperiled by employing less restrictive measures" (internal quotations omitted)); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006) (finding generalized concerns are insufficient, and instead "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened"). The district court's analysis glosses over this requirement and holds the Department to a more relaxed

standard. But COVID-19 did not create a "reasonably cautious" exception to RFRA. Nor can mere reference to COVID-19 excuse the Department's violation of Plaintiffs' civil rights.

Moreover, any insinuation that the COVID-19 pandemic represents a significant changed circumstance that would warrant unilateral modification of the permanent injunction under Federal Rule of Civil Procedure 60(b) or any other rule or principle of equity is unfounded. The Department cannot simply choose to ignore a federal court order. The Supreme Court noted long ago that permitting a party to modify the terms of a court order on its own accord, without judicial oversight—as the Department did here—is deeply corrosive to the rule of law. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."). If the Department had concluded that the COVID-19 pandemic constituted a material change of circumstances—not simply a pretext for imposing the same clean-shaven requirement it had pursued for years—the proper means of pursuing modification of the Permanent Injunction would have been to approach the district court to request modification.

To that end, the Federal Rules of Civil Procedure are clear—only a court, acting upon a motion from the aggrieved party, has the authority to relieve that party of its obligations under a court order. *See* Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . ."); *see also Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (explaining that in order to be availed of Rule 60(b), a party must make a motion "within a reasonable time"). The Department could not be relieved from its obligations under the Permanent Injunction unless and until it proved that such a modification was warranted. *See Horne v. Flores*, 557 U.S. 433, 447 (2009) (noting that under Rule 60(b)(5), "[t]he party seeking relief bears the burden of establishing that changed circumstances warrant relief"). The Department should be well aware of Rule 60(b), given that Judge Stephen Williams specifically addressed this point earlier in this litigation. *See Potter III*, 558 F.3d at 554 (Williams, J., concurring). Citing Rule 60(b)(5), Judge Williams explained that if the Department wished to seek relief from the permanent injunction, it would need to do so by convincing the court of "a significant change either in factual conditions or in law." *Id.* (citation omitted). The Department plainly did not heed this instruction.

II.    **The District Court Erred—Both Factually and Legally—by Holding That Contempt Was Inappropriate Because Plaintiffs' Damages Are Likely to be *De Minimis*.**

In asserting that Plaintiffs' damages were likely to be *de minimis* as a basis for declining to hold the Department in contempt, the district court made two reversible errors. First, this conclusion is a clearly erroneous factual finding. Second, the district court's reliance on the extent of the damages rests on an error of law.

A.    **The District Court's Conclusion that Plaintiffs' Damages Are Likely to be *De Minimis* Was Plainly Erroneous.**

The district court erroneously found that Plaintiffs' "damages are likely to be de minimis," and relied on that finding to reach its conclusion that the Department "should not be branded as a contemnor." JA270. Whether damages are *de minimis* is a question of fact. *Cf. Johnson v. Koch Foods, Inc.*, 670 F. Supp. 2d 657, 672 (E.D. Tenn. 2009) ("[A] determination of what time is *de minimis* is fundamentally factual."); *Rudner v. Abbott Labs., Inc.*, 664 F. Supp. 1100, 1107 (N.D. Ohio 1987) (whether the defendant's sales were *de minimis* required resolution of issues of material fact). Here, the record before the district court contained no evidence to support the conclusion that Plaintiffs' damages are likely to be *de minimis*. Accordingly, the district court's finding was clearly erroneous, and warrants reversal.

Plaintiffs' contempt motion (and supporting declarations) set forth in detail several categories of damages Plaintiffs suffered as a result of their removal from

field duty for which they seek compensation. These include: (1) lost income, leave, and related benefits; (2) compensation for incidental out-of-pocket expenses Plaintiffs incurred; (3) non-economic damages sufficient to compensate Plaintiffs for the substantial personal and familial disruptions Plaintiffs suffered, as well as the loss of career advancement opportunities; and (4) attorney's fees in an amount to be submitted in connection with this action. *Potter* Dkt. 224-1 at 22–24.

Plaintiffs averred that the largest category of damages they are likely owed is the compensation they were denied due to their reassignments to less desirable logistical positions within the Department. *Id.* at 24. However, Plaintiffs also explained "that the precise amount of such damages that they are owed cannot be ascertained adequately without limited discovery of the Department." *Id.* For example, Plaintiffs noted that they "had only limited opportunities to work overtime during the period they were reassigned to logistical positions—certainly fewer such opportunities than individuals working in the field." *Id.* However, Plaintiffs also explained that:

> without the opportunity to review Department-wide overtime data for the period in which they were reassigned, Plaintiffs cannot accurately estimate the overtime-related damages that they are owed. Access to the Department's human resources data may also be necessary to accurately quantify the amount of holiday, evening, and weekend differential pay Plaintiffs were denied during the period of their reassignments.

*Id.*[11]

Accordingly, Plaintiffs requested that the district court authorize limited discovery from the Department to enable Plaintiffs to quantify the damages they are owed. *Id.* at 25–26. As Plaintiffs pointed out to the district court, limited discovery is not uncommon in contempt proceedings. *See, e.g., Wesley Jensen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 229 (D. Del. 2003) ("To obtain discovery based on allegations of civil contempt, [the movant] must make a *prima facie* showing that a court order has been disobeyed."); *United States v. IBM Corp.*, 60 F.R.D. 650, 653 (S.D.N.Y. 1973) ("[T]he court has decided to allow at least limited discovery by IBM against the government on the issue of the damages occasioned by IBM's failure to comply with this [court's] order . . . ."). Indeed, as Plaintiffs noted, due process rights of "both the alleged contemnor and the complainant" may require discovery in civil contempt proceedings as necessary "to resolve relevant factual disputes . . . ." *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005).

---

[11] While Plaintiffs' damages argument focuses heavily on the issue of overtime, other categories of damages to which they are entitled—such as increased commuting expenses they incurred as a result of their reassignments—may also be significant. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 74 (1990) (recognizing that "the hours and maintenance expenses that are consumed by long daily commutes" can constitute a "significant penalt[y]").

The Department did not oppose Plaintiffs' request for limited discovery on the issue of damages. Nor did the Department submit any evidence which would tend to undermine Plaintiffs' damages claims or enable a quantification of Plaintiffs' damages without discovery. The only evidence the Department provided on the issue of damages was a single paragraph in the Declaration of Amy Mauro, the Department's Chief of Staff, in which she alleged that Plaintiffs were reassigned "to non-field positions, at the same salary and benefits, and with opportunities for overtime." JA206 ¶ 14. But Ms. Mauro's testimony says nothing about the *amount* of overtime opportunities that Plaintiffs had in their administrative positions—which is the core of Plaintiffs' damages argument—much less the amount relative to their overtime pay when they were on field duty.

Plaintiffs do not dispute that they had *some* opportunities for overtime after they had been removed from field duty. But they do contend that any overtime opportunities they may have had were materially less than what they previously enjoyed and what they would have enjoyed if they had not been removed from field duty. *Potter* Dkt. 224-1 at 9–10. Ms. Mauro's declaration provides no reason to doubt this or to obviate the need for discovery on this issue. Notably, the Department—or more specifically, its Human Resources Department—presumably has access to the data needed to prove or disprove Plaintiffs' assertions about overtime. The fact that the Department chose not to submit to the district court a

declaration from an individual qualified to speak to that data suggests that Plaintiffs' lost overtime opportunities may well have been more than *de minimis*.

The district court's Memorandum Opinion includes no discussion or findings related to the amount of overtime Plaintiffs were forced to forego as a result of their reassignments. And for good reason—as Plaintiffs have repeatedly noted, a factual determination regarding overtime cannot be made without discovery of the Department. The district court did not hold that Plaintiffs are not legally entitled to discovery on this issue. Nor did the district court find that Plaintiffs' damages could be adequately quantified without discovery. Rather, the district court simply ignored this issue entirely and issued the summary finding that "plaintiffs' damages are likely to be de minimis."

This constitutes reversible error for two reasons. First, the district court's failure to affirmatively resolve disputed issues of fact related to the amount of overtime opportunities that Plaintiffs lost was an abuse of discretion. *See Tranzact Techs., Inc.*, 406 F.3d at 855 ("Due process requires a district court to resolve relevant factual disputes—allowing discovery and holding an evidentiary hearing if necessary—in a civil contempt proceeding."); *Berks v. United States*, 825 F.2d 1262, 1263 (8th Cir. 1987) (holding that a "district court's bald conclusion, without any explanation of the facts or law upon which its conclusion was based," warranted remand). Indeed, despite the fact that the overtime issue featured prominently in the

35

parties' briefing on the issue of damages, the district court's Memorandum Order fails to mention overtime even once.

Second, by failing to engage with the evidentiary record regarding damages, the district court provided no reasonable basis for its conclusion that damages are likely to be *de minimis*. In fact, in light of Plaintiffs' uncontested argument that discovery is necessary to quantify damages (which the district court did not fault), the district court's conclusion is logically impossible. If discovery is necessary to quantify damages, then any conclusion regarding the quantum of damages owed (*e.g.*, that "damages are likely to be de minimis") is inherently impossible until discovery has been completed. As such, the district court's factual finding on the issue of damages was, at best premature. Accordingly, its ruling should be reversed. *See, e.g.*, *United States v. City of Northlake*, 942 F.2d 1164, 1170 (7th Cir. 1991) (reversing denial of contempt motion and holding that complainant was entitled to discovery as to whether defendant was in contempt).

## B.    *De Minimis* Damages Are Enough to Support a RFRA Claim.

Even if Plaintiffs' damages were *de minimis*, considering the measure of damages was reversible legal error. RFRA enacts "a statutory version of the Free Exercise Clause," establishing—in the wake of the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990)—religious liberty rights that match other constitutional protections. Douglas Laycock, *The Religious Freedom*

*Restoration Act*, 1993 BYU L. Rev. 221, 221. That is why courts consider RFRA to cover "the same types of rights as those protected under the Free Exercise Clause of the First Amendment." *Tyndale House Publishers, Inc. v. Sebelius*, 904 F. Supp. 2d 106, 129 (D.D.C. 2012). And, as the Supreme Court has long held, "[t]he loss of First Amendment freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality) (emphasis added); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (holding loss of RFRA rights is irreparable injury), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Opulent Life Church v. City of Holly Springs, Miss*, 697 F.3d 279, 295 (5th Cir. 2012) (holding loss of RLUIPA rights is irreparable injury). Thus, Plaintiffs' damages can only be understood through this lens of irreparable injury. *See McComb*, 336 U.S. at 191 ("The private or public rights that the decree sought to protect are an important measure of the remedy.").

The amount of damages is not a relevant consideration when determining the scope of rights under RFRA. As Justice Brennan has explained, courts "cannot sustain an intrusion on First Amendment rights on the ground that the intrusion is only a minor one." *Lamont v. Postmaster Gen.*, 381 U.S. 301, 309 (1965) (Brennan, J., concurring). As far back as *Boyd v. United States*, the Supreme Court opined that even if a constitutional rights violation "may be that . . . obnoxious thing in its

mildest and least repulsive form[,] . . . illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." 116 U.S. 616, 635 (1886). Relatedly, the Court has held "that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). As with the least-restrictive-means standard, the district court's consideration of an impermissible factor constitutes legal error and therefore an abuse of discretion.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's refusal to hold the Department in civil contempt and remand this action for Plaintiffs-Appellants to undertake discovery on the issue of damages.

Dated: January 22, 2024                 Respectfully submitted,

/s/ Lucas Moench
Robert K. Kelner (No. 47000)
Kevin B. Collins (No. 64870)
Lucas Moench (No. 64879)
Eli Nachmany*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rkelner@cov.com
kcollins@cov.com
lmoench@cov.com

38

enachmany@cov.com

Kelly J. Shackelford*
Jeffrey C. Mateer*
David J. Hacker (No. 61255)
FIRST LIBERTY INSTITUTE
2001 West Plano Pkwy., Ste. 1600
Plano, Texas 75075
(972) 941-4444
dhacker@firstliberty.org

Rebecca R. Dummermuth (No. 64835)
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave., NW
Ste. 1410
Washington, DC 20004
(202) 921-4105
bdummermuth@firstliberty.org

*Counsel for Plaintiffs-Appellants*

* Application for admission forthcoming

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 9,150 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word using 14-point Times New Roman font.

Dated: January 22, 2024                    */s/ Lucas Moench*
                                           Lucas Moench

                                           *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2024, the foregoing OPENING

BRIEF OF PLAINTIFFS-APPELLANTS CALVERT L. POTTER, *ET AL.* AND

ADDENDUM were filed electronically with the Clerk of the Court for the United

States Court of Appeals for the District of Columbia Circuit through the Court's

CM/ECF system, causing them to be served on all counsel of record.


*/s/ Lucas Moench*
Lucas Moench

*Counsel for Plaintiffs-Appellants*