# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 27, 2024    Decided January 28, 2025

No. 23-7124

CALVERT L. POTTER, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cv-01189)
(No. 1:05-cv-01792)

*Lucas Moench* argued the cause for appellants. With him on the briefs were *Kelly J. Shackelford*, *Jeffrey C. Mateer*, *David J. Hacker*, *Rebecca R. Dummermuth*, *Robert K. Kelner*, *Kevin B. Collins*, and *Eli Nachmany*.

*Dia Rasinariu*, Assistant Attorney General, Office of the Solicitor General at Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Brian L. Schwalb*, Attorney General, *Caroline S. Van Zile*, Solicitor General, and *Ashwin P. Phatak*, Principal Deputy Solicitor General. *Carl J. Schifferle*, Assistant Attorney General, entered an appearance.

2

Before: RAO and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: This case involves a civil contempt motion to enforce an injunction protecting free exercise rights under the Religious Freedom Restoration Act (RFRA). When deciding this motion, the district court was required to adjudicate whether there was a violation of the injunction, or whether a recognized defense to contempt applied. Because the district court denied the motion on other discretionary grounds, we vacate and remand for application of the correct legal framework.

I.

In 2005, the District of Columbia Fire and Emergency Medical Services Department implemented a policy prohibiting firefighters and first responders from wearing facial hair that interferes with the sealing surface of a face mask—effectively prohibiting beards. Under the policy, firefighters who declined to shave were immediately moved to administrative duty and, after four days of noncompliance, were recommended for termination. The Department made no exceptions for employees who wore beards for religious reasons.

A group of bearded firefighters sued the Department, arguing that the policy violated RFRA because it burdened their religious practice of wearing facial hair. *See* Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, § 3, 107 Stat. 1488, 1488–89 (codified at 42 U.S.C. § 2000bb–1) (prohibiting the federal government from substantially

3

burdening a person's exercise of religion except when the burden is the least restrictive means of furthering a compelling government interest). The district court granted summary judgment to the firefighters on their RFRA claim, holding the Department failed to carry its burden of showing its policy was the least restrictive means of furthering its interest in operational effectiveness. *See Potter v. District of Columbia*, 2007 WL 2892685, at *7–9 (D.D.C. Sept. 28, 2007), *aff'd*, 558 F.3d 542 (D.C. Cir. 2009). The court ordered the Department to restore the firefighters to field duty and permanently enjoined the Department from enforcing the 2005 policy against them ("2007 injunction"). For the next decade, the firefighters were allowed to work in field operations while maintaining their beards.

As COVID-19 spread in March 2020, the Department implemented a new facial hair policy and mandated the use of masks during patient contact. The Department transferred the four bearded firefighters it still employed to administrative roles "due to concerns about their ability to properly wear N95 respirators with facial hair." The firefighters attest they objected to the transfers and informed their supervisors that the transfers violated the 2007 injunction, presumably because the new policy similarly burdened their religious practice of wearing beards.

Almost a year and a half after the 2020 policy went into effect, the firefighters' counsel requested that the Department immediately cease enforcement of the policy against the firefighters and restore them to field duty. The firefighters also sought damages because the administrative reassignments offered fewer opportunities for overtime pay, required a five-day work week instead of the firefighters' regular 24-hours-on, 72-hours-off schedule, and caused increased vehicle wear and tear from daily commuting. In response, the Department

4

restored three firefighters to field duty, while the fourth chose to stay in his administrative role. Although the firefighters had returned to their preferred assignments, settlement negotiations over damages were unsuccessful, and the firefighters filed a motion for civil contempt, alleging the Department had violated the 2007 injunction.

The district court denied the motion for civil contempt. *Potter v. District of Columbia*, 2023 WL 6403852, at *2 (D.D.C. Aug. 31, 2023). The court recognized that the Department may have violated the 2007 injunction "by issuing and enforcing a policy nearly identical to the enjoined [2005 policy] and by returning plaintiffs to administrative duty." *Id.* But the court asserted that "[w]hether to brand a party's noncompliance as contempt lies within a court's discretion." *Id.* (cleaned up). The court declined to hold the Department in contempt because it "acted in a reasonably cautious way, under unprecedented and extraordinary circumstances, to keep plaintiffs and the public it served as safe as it could." *Id.* Furthermore, any damages were likely de minimis because the Department maintained the firefighters' salaries and benefits during the administrative transfers. *Id.*

II.

The firefighters appeal the district court's denial of their motion for civil contempt. We have jurisdiction because the denial of a civil contempt motion brought to enforce a final judgment is itself a final judgment. *Serv. Emps. Int'l Union Loc. 32BJ v. Preeminent Protective Servs. Inc.*, 997 F.3d 1217, 1221 (D.C. Cir. 2021); *Sanders v. Monsanto Co.*, 574 F.2d 198, 199 (5th Cir. 1978); 28 U.S.C. § 1291. Furthermore, although the alleged contempt in this case has ceased, the controversy is not moot because the firefighters seek damages for past violations of the 2007 injunction.

5

III.

The firefighters argue the district court abused its discretion by misapplying the legal standards for civil contempt. We agree and remand for the district court to apply the correct standards in the first instance.

A.

Federal courts possess "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Civil contempt serves "to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled." *Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 328 (1904); *see also* Edward Dangel, Contempt § 178 (1939) ("[T]he [civil] contemnor is not really in contempt of the court; he is in contempt of the party for whose benefit the court order was made."). When assessing a civil contempt motion, a court must ordinarily determine whether the moving party has met his burden of showing "by clear and convincing evidence" that the alleged contemnor has violated a "clear and unambiguous" order of the court. *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (cleaned up). The party moving for civil contempt "faces a heavy burden." *United States v. Microsoft Corp.*, 147 F.3d 935, 940 (D.C. Cir. 1998).

We review a district court's denial of a civil contempt motion for abuse of discretion. *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006). District courts have discretion when interpreting their orders and assessing "whether an injunction has been violated." *Union Tool Co. v. Wilson*, 259 U.S. 107, 112 (1922); *see also Washington-Baltimore Newspaper Guild, Loc. 35, of Newspaper Guild,*

6

*AFL-CIO-CLC v. Washington Post Co.*, 626 F.2d 1029, 1031 (D.C. Cir. 1980).

Because civil contempt vindicates the rights of private parties, however, district courts do not have discretion to overlook a proven violation, absent a recognized defense. *See Union Tool Co.*, 259 U.S. at 112 (explaining that "legal discretion in [a civil contempt proceeding] does not extend to a refusal to apply well-settled principles of law"). "[T]he grant or withholding of remedial relief [through civil contempt] is not wholly discretionary with the judge." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Injunctions "creat[e] important legal rights," and when those rights have been violated, "the role of the court on a motion to hold respondents in civil contempt is not to fix blame but to ascertain how the violation occurred, how to prevent a recurrence, and how to repair any damage that has been done." *Doe v. Gen. Hosp. of Dist. of Columbia*, 434 F.2d 427, 431 (D.C. Cir. 1970). In short, a party seeking civil contempt "ha[s] a right to a judicial assessment as to whether the defendant [is] in contempt of the court's previous order."[1] *Thompson v. Cleland*, 782 F.2d 719, 722 (7th Cir. 1986).

---

[1] It is well established that a court does not have unfettered discretion to excuse civil contempt. *See, e.g.*, *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 243 (2d Cir. 2014); *Parker v. United States*, 153 F.2d 66, 70 (1st Cir. 1946); *L.E. Waterman Co. v. Standard Drug Co.*, 202 F. 167, 172 (6th Cir. 1913); *Enoch Morgan's Sons Co. v. Gibson*, 122 F. 420, 423 (8th Cir. 1903). This principle also appears in early state court decisions. *See, e.g.*, *Howard v. Durand*, 36 Ga. 346, 359 (1867); *Gates v. McDaniel*, 3 Port. 356, 359–61 (Ala. 1836); *see also Red River Valley Brick Corp. v. City of Grand Forks*, 146 N.W. 876, 877 (N.D. 1914); *State v. N. Shore Boom & Driving Co.*, 103 P. 426, 430 (Wash. 1909), *modified*, 107 P. 196 (Wash. 1910).

7

Even when a party has violated an injunction, contempt may be avoided if a recognized defense applies. For example, impossibility of performance is a recognized defense, at least to coercive civil contempt. *See Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975) ("It would be unreasonable and unjust to hold in contempt a defendant who demonstrated that he was powerless to comply."). Common law equitable defenses, such as laches, may also apply. *See, e.g.*, *Coffey v. Braddy*, 834 F.3d 1184, 1189 (11th Cir. 2016).

It is well settled, however, that neither good faith nor lack of willfulness is a defense to civil contempt. *See, e.g.*, *Doe*, 434 F.2d at 431 ("The motion for civil contempt does not turn on the question whether [the contemnor] acted in good faith. Its purpose is not to punish intentional misconduct, but rather to enforce compliance with an order of the court and to remedy any harm inflicted on one party by the other party's failure to comply."). Good-faith compliance may be relevant to mitigation at the remedies stage, but the court lacks discretion to excuse civil contempt based on the contemnor's good faith. *McComb*, 336 U.S. at 191 ("Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act."); *Taggart v. Lorenzen*, 587 U.S. 554, 562 (2019) ("[A] party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction.").

B.

In denying the firefighters' motion for contempt, the district court asserted a general discretion to withhold contempt because "courts need not impose the contempt sanction for every violation." *Potter*, 2023 WL 6403852, at *2 (quoting *Marshall v. Loc. Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Inc.*, 593 F.2d

8

1297, 1303 (D.C. Cir. 1979)). The court assumed without deciding that the Department violated the 2007 injunction, but then exercised its discretion to deny contempt because "the Department acted in a reasonably cautious way, under unprecedented and extraordinary circumstances, to keep plaintiffs and the public it served as safe as it could." *Id.* The district court also noted that contempt was not appropriate because any damages to the firefighters were likely de minimis. *Id.*

The district court applied the wrong legal framework for assessing civil contempt. The firefighters had a private right to enforcement of the original injunction, which protected their religious freedom and permanently forbade the Department from enforcing the 2005 facial hair policy against them. The district court had no general discretion to excuse civil contempt. *See McComb*, 336 U.S. at 191; *Doe*, 434 F.2d at 431. Instead, the court was required to determine whether the Department violated the firefighters' rights under the 2007 injunction. Alternatively, the court could have withheld judgment on the alleged violation if it had concluded that a recognized defense applied. Violating an injunction "in a reasonably cautious way," however, is not a recognized defense to civil contempt. Even if the Department's behavior was reasonable in light of the pandemic, good faith and lack of willfulness is not a defense to civil contempt. *See Doe*, 434 F.2d at 431.

To support denying the contempt motion, the district court also relied on the fact that damages are likely minimal. The extent of any damages, however, does not answer the threshold question of whether the Department violated the 2007 injunction. Nor does the amount of damages provide a valid defense against civil contempt.

9

We recognize that the district court relied on our statement that courts "need not impose the contempt sanction for every violation." *Marshall*, 593 F.2d at 1303. In context, however, *Marshall* did not establish a free-floating discretion to excuse civil contempt. Rather, *Marshall* stands for the proposition that an alleged violation of an injunction will not warrant civil contempt when the injunction "was not specific enough," that is, when the order was not clear and unambiguous. *Id.* Some district courts have relied on *Marshall* when asserting a general discretion to deny a civil contempt motion even when a clear and unambiguous order has been violated and no defense to contempt applies. But that interpretation is incorrect and inconsistent with the longstanding legal framework outlined above. *See McComb*, 336 U.S. at 191.

Furthermore, we emphasize that civil contempt differs in important ways from criminal contempt. *See* Dan Dobbs, Law of Remedies § 2.8(3) (2d ed. 1993). In the criminal contempt context, district courts enjoy a broader discretion because criminal contempt is "prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders." *Bessette*, 194 U.S. at 328 (quoting *In re Nevitt*, 117 F. 448, 458 (8th Cir. 1902)). When deciding whether to punish for criminal contempt, the district court enjoys a discretion akin to the non-prosecution power in the executive. *See, e.g.*, *Parker*, 153 F.2d at 70 (contrasting civil contempt power with "that of criminal contempt[,] where the court in its discretion may withhold punishment for the past act of disobedience"); *cf. Marshall*, 593 F.2d at 1303 n.22 (citing to criminal contempt cases recognizing discretion in the district courts).

The firefighters here sought civil contempt, and in this context, there is no general judicial discretion to excuse the alleged violation. *See Doe*, 434 F.2d at 431; *see also Bessette*,

10

194 U.S. at 328 (explaining that civil contempt proceedings are "remedial and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce"). We therefore reject the Department's argument that district courts have "negative discretion" to deny a civil contempt motion alleging the violation of an injunction protecting private legal rights. *See Union Tool Co.*, 259 U.S. at 112 ("[L]egal discretion in [a civil contempt proceeding] does not extend to a refusal to apply well-settled principles of law.").

C.

The Department urges this court to reach the merits of the contempt action and affirmatively hold that the firefighters have failed to carry their burden of establishing a violation of the 2007 injunction. The parties, however, dispute the limited facts in the record before us. *Compare* JA 208 ("At no point did [the Department] instruct Plaintiffs to comply with the [2020 policy] or indicate that to remain in their positions in operations they would be required to remove their facial hair."), *with* JA 149 ("My supervisor told me that I could remain on regular field duty if I shaved my facial hair as required by [the 2020 policy]."). Any potential factual disputes are best resolved by the district court. *See Doe*, 434 F.2d at 431–32. Moreover, it is appropriate for the district court to decide the contempt motion under the correct legal standards in the first instance.

On remand, the district court must first evaluate whether the firefighters have met their burden of demonstrating "by clear and convincing evidence" that the Department has violated a "clear and unambiguous" order. *Armstrong*, 1 F.3d at 1289 (cleaned up). Although there is no general discretion to excuse violations of the 2007 injunction, the district court has

11

discretion in assessing whether a violation has occurred. *Washington-Baltimore Newspaper Guild*, 626 F.2d at 1031; *see also United States v. Burr*, 25 F. Cas. 30, 35 (C.C.D. Va. 1807) (Marshall, C.J.) (explaining that "a motion to [the court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles"). If the district court determines the Department violated the 2007 injunction, it must then consider whether the Department has established a recognized defense to contempt. Alternatively, if a recognized defense applies, the district court may decide on that ground and withhold judgment on whether its order was violated.

As a defense to contempt, the Department maintains it took "reasonable and diligent" steps "in good faith" over many years. First, as we have already made clear, the court lacks discretion to excuse civil contempt based on the contemnor's good faith. *McComb*, 336 U.S. at 191. So "reasonable and diligent steps taken in good faith" is not a defense. Second, we have yet to decide whether "substantial compliance" provides a defense to civil contempt. *In re Sealed Case*, 77 F.4th 815, 834 (D.C. Cir. 2023); *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1017 (D.C. Cir. 1997). But we have consistently held that, if such a defense applies, it requires the contemnor to show at least that it "took all reasonable steps within its power to comply with the court's order." *In re Sealed Case*, 77 F.4th at 835 (cleaned up). Moreover, in discussing the defense, this circuit has reinforced the longstanding principle that "good faith" alone is not a recognized defense. *Id*. Indeed, the Department concedes it cannot defend against contempt by relying merely on good faith efforts at compliance. Guided by the framework articulated here, we leave it to the district court to address the applicability and scope of the Department's asserted defenses.

12

\* \* \*

Firefighters who wear their beards for religious reasons secured an injunction against the Department protecting their rights under RFRA. The firefighters alleged the Department was in contempt, and they are entitled to a legal determination of their rights. For the foregoing reasons, we vacate the dismissal order and remand for the district court to assess whether the firefighters have established a violation of the 2007 injunction, or whether a recognized defense to contempt applies.

*So ordered.*